IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**
    Plaintiff,

vs.

                                                             Cr. No. 13-3301 JAP

**ROBERT E. ADAMS,**
    Defendant.

**MEMORANDUM OPINION AND ORDER**

On December 17, 2013, the Government filed the UNITED STATES' OPPOSED MOTION TO COMPEL HANDWRITING EXEMPLARS FROM DEFENDANT ROBERT E. ADAMS (Doc. No. 16) (Motion to Compel). The Government seeks an order requiring Mr. Adams to complete "the government's handwriting protocol which is designed to prevent a person from disguising his or her handwriting." *Id.* at 11. Mr. Adams opposes the motion. *See* DEFENDANT ROBERT ADAMS' RESPONSE TO THE UNITED STATES' OPPOSED MOTION TO COMPEL HANDWRITING EXEMPLARS FROM DEFENDANT (Doc. No. 23). On February 6, 2014, the Court held a hearing on the Government's Motion to Compel at which Norman Cairns represented the Government and Nancy Hollander and Vincent Ward represented Mr. Adams, who was present. After reviewing the briefing and considering oral argument, the Court finds that handwriting samples are reasonably necessary and will order Mr. Adams to complete the Government's handwriting protocol as described herein.

**BACKGROUND**

1. **The Investigation of Mr. Adams[1]**

In January 2013, the Government obtained warrants to search Mr. Adams's home and business for, among other things, records pertaining to his firearms and ammunition business and

---

[1] The following facts are based on the Government's statements in its Motion to Compel and at the February 6, 2014 hearing.

records involving his importation of firearms. According to the warrant affidavit, Mr. Adams, a federal firearms licensee, was illegally smuggling firearms into the United States in violation of 18 U.S.C. § 545. During the search, the Government recovered three separate Form 4457 documents from Mr. Adams's home and/or business. A Form 4457 is used to certify that items being brought into the United States were originally removed from the United States. One Form 4457 recovered from Mr. Adams lists 41 firearms the Government alleges Mr. Adams purchased in Canada. The Government alleges that the guns listed on this form are guns Mr. Adams illegally attempted to smuggle into the United States. However, Mr. Adams's name and signature do not appear on any of the three separate forms, which are signed by a "Robert E. Hogan."

On October 9, 2013, a grand jury indicted Mr. Adams on two counts of unlawful importation of merchandise and 39 counts of attempted unlawful importation of merchandise in violation of 18 U.S.C. § 545. *See* REDACTED INDICTMENT (Doc. No. 2). The Government seeks a handwriting exemplar from Mr. Adams in order to compare his handwriting with the handwriting on the three forms. At trial, the Government plans on arguing that Mr. Adams washed the forms signed by Mr. Hogan and filled them in with the descriptions of firearms he purchased outside the United States.

   2.  **Handwriting Protocol**

At the February 6, 2014 hearing, the Court asked the Government to describe its handwriting protocol. Mr. Cairns explained that the Government would supply Mr. Adams with a typed document containing the material he would be asked to copy. Mr. Cairns provided an

example, which is attached to this MEMORANDUM OPINION AND ORDER as Exhibit 1.[2] According to Mr. Cairns, the Government would require Mr. Adams to create 20 exemplars with each hand by reproducing the material on the typed document onto a blank Form 4457. Mr. Adams would be expected to complete this process for each Form 4457 the Government seeks to analyze. At most, Mr. Adams would be required to produce 120 exemplars. However, Mr. Cairns indicated that the Government would not require Mr. Adams to produce exemplars with his non-dominant hand once the Government was able to identify Mr. Adams's dominant hand.

## DISCUSSION

In his response, Mr. Adams makes four arguments why the Court should deny the Government's Motion to Compel: 1) the Motion to Compel is premature, 2) the Government does not need handwriting exemplars, 3) the Government has not sufficiently shown that its handwriting protocol does not violate the Fifth Amendment, and 4) handwriting analysis is not admissible expert testimony.

**1.      Prematurity**

Mr. Adams asks the Court to delay ruling on the Government's Motion to Compel until it rules on Mr. Adams's motion to suppress the three seized forms, which Mr. Adams filed on February 10, 2014. *See* DEFENDANT ROBERT E. ADAMS' MOTION TO SUPPRESS EVIDENCE OR, IN THE ALTERNATIVE, TO HOLD A FRANKS HEARING, AND MEMORANDUM IN SUPPORT THEREOF (Doc. No. 28) (Motion to Suppress). The parties agree that the handwriting exemplars will not be useful if the Court grants the Motion to

---

[2] Mr. Cairns also provided the Court with a document from the Homeland Security Investigations Forensic Laboratory discussing handwriting exemplars. This document is attached to this MEMORANDUM OPINION AND ORDER as Exhibit 2. This document states that the "material must be dictated to the writer without suggestion as to the arrangement or spelling, punctuation, capitalization." However, Mr. Cairns clearly told the Court that Mr. Adams would not be required to produce handwriting exemplars via dictation. In issuing this order, the Court will disregard the language on the Homeland Security Investigations Forensic Laboratory document.

Suppress. However, in its reply, the Government contends that Mr. Adams's request is merely a "delay tactic." *See* THE UNITED STATES' REPLY TO DEFENDANT'S RESPONSE TO THE MOTION TO COMPEL HANDWRITING EXEMPLARS (Doc. No. 24) (Reply) at 3.

After reviewing the Motion to Suppress and the UNITED STATES'S AMENDED REPONSE TO DEFENDANT ROBERT E. ADAMS' MOTION TO SUPPRESS EVIDENCE (Doc. No. 32), the Court elects to rule on the Government's Motion to Compel at this time. Because the Motion to Suppress is lengthy and complicated, the Court will not be able to rule on that motion quickly. The Court is concerned that delaying production of the handwriting exemplars could disturb the July 7, 2014 trial date, which Mr. Adams requested be a "firm setting." UNOPPOSED MOTION FOR CONTINUANCE OF TRIAL (Doc. No. 27). In addition, it is not apparent to the Court that requiring Mr. Adams to produce a handwriting exemplar will be wasteful. Under these circumstances, the Court finds that it is not overly onerous to require Mr. Adams to complete the Government's handwriting protocol. The Court's granting of the Motion to Compel should not be construed as a decision to deny Mr. Adams's Motion to Suppress.

**2.     Necessity**

Mr. Adams contends that the Motion to Compel is unnecessary because the Government already has in its possession numerous examples of his handwriting. The Government states that the "investigative protocol requires an exact replica of the documents in question for comparison purposes." Reply at 4. At the February 6, 2014 hearing, the Government explained that the Forensic Document Laboratory needs an exact, character-for-character copy of each disputed document to reliably determine authorship. Mr. Adams does not directly challenge this assertion; thus, the Court finds that a handwriting exemplar is reasonably necessary to the Government's

case.[3]

### 3.    The Fifth Amendment

As a general matter, forcing a defendant to produce a handwriting sample does not violate the Fourth Amendment protection against unreasonable searches or the Fifth Amendment right against self-incrimination. *United States v. Cotner*, 657 F.2d 1171, 1173 (10th Cir. 1981). The Fifth Amendment privilege against self-incrimination only protects against compelled communications. As the Supreme Court has explained, handwriting is an identifying physical characteristic; producing a handwriting sample is typically not testimonial or communicative in nature. *Gilbert v. Cal.*, 388 U.S. 263, 266-267 (1967).

Nonetheless, Defendant contends that compelling Mr. Adams to complete the Government's handwriting protocol may violate the Fifth Amendment if it requires Mr. Adams to reveal information beyond the mere appearance of his handwriting. For example, the First Circuit Court of Appeals and several district courts have found that compelling a defendant to produce a handwriting sample via dictation violates the Fifth Amendment because it forces the defendant to reveal how he or she spells certain words. *United States v. Campbell*, 732 F.2d 1017, 1021 (1st Cir. 1984); *United States v. Kallstrom*, 446 F. Supp. 2d 772 (E.D. Mich. 2006); *United States v. Matos*, 990 F. Supp. 141, 144 (E.D.N.Y. 1998) (refusing to compel the defendant to produce a handwriting sample via dictation because "[r]equiring a person to provide an exemplar from dictation that does not provide the spelling of the dictated words is the

---

[3] There is some dispute about whether a court's authority to compel a defendant to produce a handwriting exemplar stems from the All Writs Act or from Fed. R. Crim. P. 17. In either case, a court should not compel a handwriting sample unless it is necessary. *See*, *e.g.*, *United States v. Sanborn*, No. 1:12–cr–00202–JAW , 2013 WL 5571082, at *1 (D. Me. Oct. 9, 2013) (holding that courts have the discretion to compel a handwriting sample under the All Writs Act if the sample is necessary for conducting factual inquiries); *United States v. Nowak*, Criminal No. 10-633, 2012 U.S. Dist. LEXIS 67006, at *1 (D.N.J. May 14, 2012) (when ordering a defendant to produce a handwriting sample under Rule 17, a court must consider whether the handwriting exemplar is necessary to prepare for trial).
.

functional equivalent of requiring the person to state how he spells the dictated words"); *United States v. Luqukies Ramail Watkins*, No. 96–CR–418–z, 1996 WL 712665, at *2 (D. Colo. Dec. 5, 1996).

Because the Government has assured the Court that its handwriting protocol does not involve dictation, the Court may compel Mr. Adams to complete the protocol without forcing Mr. Adams to reveal potentially incriminating information about his manner of spelling. At the hearing, after learning that the Government did not intend to collect Mr. Adams's handwriting exemplar using dictation, Mr. Ward continued to argue that the Government had not sufficiently shown that its handwriting protocol complied with Fifth Amendment requirements. However, Mr. Ward could not identify particular defects in the protocol. The Court is satisfied that the Government's proposed handwriting protocol is constitutional.

**4.      Admissibility of Handwriting Analysis**

Mr. Adams argues that the Court should not order him to produce a handwriting exemplar because the Government seeks to use the exemplar for the inadmissible purpose of having a handwriting expert testify to the authorship of the seized forms. According to Mr. Adams, "there is considerable dispute about whether handwriting testimony is sufficiently reliable to survive scrutiny under *Daubert*."[4] Response at 12. The Government disagrees, calling handwriting analysis an accepted field of expertise. Now is not the time to resolve this dispute.

Mr. Adams is asking the Court to decide, prematurely, whether the testimony of the Government's handwriting expert is admissible, before this expert has conducted an analysis and has had an opportunity to explain the expert's methodology. The Court finds that this approach is impractical and would be overly time-consuming. In addition, the Court notes that neither

---

[4] Mr. Adams refers to *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), the seminal Supreme Court case setting forth the standard for the admissibility of expert testimony.

6

binding nor persuasive precedent prevents this Court from admitting the testimony of a handwriting expert. Every court of appeals to consider the issue has permitted the introduction of handwriting analysis. *See United States v. Jolivet*, 224 F.3d 902, 906 (8th Cir. 2000); *United States v. Paul*, 175 F.3d 906, 911 (11th Cir. 1999); *United States v. Jones*, 107 F.3d 1147, 1161 (6th Cir. 1997); *United States v. Velasquez*, 64 F.3d 844 (3rd Cir. 1995). In fact, the Tenth Circuit has affirmed at least two district court decisions to admit the testimony of a handwriting expert. *See United States v. Hernandez*, 42 F. App'x 173, 176 (10th Cir. 2002) (unpublished); *United States v. Battle*, No. 98-3246, 1999 WL 596966, at *4 (10th Cir. Aug. 6, 1999) (unpublished). The Court will consider the admissibility of the handwriting expert's testimony at the appropriate time.

    IT IS THEREFORE ORDERED THAT:

1. The UNITED STATES' OPPOSED MOTION TO COMPEL HANDWRITING EXEMPLARS FROM DEFENDANT ROBERT E. ADAMS (Doc. No. 16) is GRANTED.

2. The parties will confer and schedule a mutually convenient time, no later than March 17, 2014, for Mr. Adams to complete the Government's handwriting protocol.

3. Mr. Adams must complete the Government's handwriting protocol as described in this MEMORANDUM OPINION AND ORDER.

_____
SENIOR UNITED STATES DISTRICT JUDGE